**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JANNETTE BAKER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **vs.** | § | |
| | § | |
| **IBM SOFTLAYER, and/or** | § | |
| **INTERNATIONAL BUSINESS** | § | |
| **MACHINES CORPORATION, d/b/a IBM** | § | |
| **and/or d/b/a IBM SOFTLAYER,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF JANNETTE BAKER'S ORIGINAL COMPLAINT**
<u>**FOR EQUITABLE AND MONETARY RELIEF**</u>

**RESPECTFULLY SUBMITTED**

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, TX 75204
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ................................................................... 1

II.     THE PARTIES .........................................................................................2

III.    DEFENDANT'S UNLAWFUL CONDUCT ...........................................2

        A.      IBM's Harsh Work Environment Turns Into a Racially
                Hostile Work Environment...........................................................2

        B       Baker Files A Formal HR Complaint After Her Manager Effectively
                Ignores a Poem Posted on an IBM Message System That Calls Cops
                Who Kill "[Nig--rs]" Heroes ......................................................3

        C.      Baker Placed on PIP Shortly After Investigation Finds "No Misconduct"......4

        D.      Baker Wrongfully Terminated at the End of Her Fake PIP ...........................6

IV.     LEGAL GROUNDS..............................................................................6

        A.      Section 1981 and Title VII Use Identical Legal Liability Theories ...................7

        B.      Title VII and Section 1981 Both Prevent Retaliation and
                Hostile Environment Discrimination ..........................................7

        C.      IBM Is Vicariously Liable for the Actions of Its Employees ...........................9

        D.      The Cat's Paw Theory of Liability Holds the Bias of an Actor Can
                Unlawfully Influence and Infect with Animus an Otherwise
                Independent Investigation or Decisionmaker  ...................................10

        E.      IBM May Not Retaliate Merely Because HR's Alleged Investigation
                Found "No Misconduct"...............................................................12

        F.      Punitive Damages Are Not Capped Under Section 1981 ...............................15

V.      CLAIMS FOR RELIEF  ....................................................................... 16

        A.      Count One – Discrimination Under Section Title VII.....................................16

        B.      Count Two – Retaliation Under Section Title VII  ..........................................16

        C.      Count Three – Discrimination Under Section 1981 ........................................ 17

**D.      Count Four – Retaliation Under Section 1981** .................................................. **18**

**VI.    <u>JURY DEMAND</u>**........................................................................................................ **18**

**VII.   <u>PRAYER FOR RELIEF</u>**.............................................................................................**19**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JANNETTE BAKER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | **CIVIL ACTION NO. 3:21-cv-270** |
| **IBM SOFTLAYER, and/or** | § | |
| **INTERNATIONAL BUSINESS MACHINES** | § | |
| **CORPORATION, d/b/a IBM and/or** | § | |
| **d/b/a IBM SOFTLAYER,** | § | |
| | § | |
| **Defendant.** | § | |

### PLAINTIFF JANNETTE BAKER'S ORIGINAL COMPLAINT
### FOR EQUITABLE AND MONETARY RELIEF

Plaintiff Jannette Baker, by her attorney, files this her Original Complaint against Defendant, IBM, Inc., alleging as follows:

### I.      JURISDICTION AND VENUE

1.      This action arises under the Civil Rights Act of 1871, codified at 42 U.S.C. Section 1981, and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. 2000e, *et seq.,* both as modified by the Civil Rights Attorney's Fee Awards Act of 1976 (42 U.S.C.A. § 1988[b]). Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a), (b).

2.      The Court further has jurisdiction over this matter as the Plaintiff has filed a charge with the EEOC naming IBM Softlayer, has received a right to sue letter, and is timely filing this action within the 90-day right to sue window.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) and (3) as the events occurred within the Dallas County portion of Dallas, Texas, within this District and this Division.

**PLAINTIFF'S ORIGINAL COMPLAINT - 1 OF 19**

## II.   THE PARTIES

4.      Plaintiff Jannette Baker is a resident of and citizen of Texas and the United States. She understood she was employed at IBM Softlayer, a division or subsidiary of IBM, and her paychecks were from an account denominated International Business Machines Corporation.

5.      Defendant IBM Softlayer and/or International Business Machines Corporation, d/b/a IBM and/or d/b/a IBM Softlayer (collectively "Defendant" or "IBM") is understood to be incorporated under the law of New York, and IBM has its headquarters and nerve center located in Armonk, New York. It may be served through its registered agent:

CT Corp. System
1999 Bryan Street, Suite 900
Dallas, Texas 75201-3136

## III.   DEFENDANT'S UNLAWFUL CONDUCT

6.      This case is an employment matter where an employer wrongfully terminated an employee based race discrimination and/or in retaliation for having opposed discrimination and having filed a good-faith complaint of discrimination.

7.      Ms. Baker was employed by IBM as a systems administrator from January 3, 2017 to June 25, 2018, making a salary of $95,000 per year, plus benefits.

8.      Ms. Baker worked at IBM's Dallas office located at 14001 Dallas Parkway in the IBM Softlayer division and/or subsidiary. At the time of her wrongful termination, her manager was Jason Galyon, and his manager was Suparna Roy.

**A.      IBM's Harsh Work Environment Turns Into a Racially Hostile Work Environment**

9.      From the very beginning, the environment Ms. Baker endured was a hostile work environment. Indeed, in the time she was employed, she took detailed notes of the conduct she

believed to be unprofessional. This hostile conduct was from both co-workers and managers, and

it started from almost her first day of training.

10.    For example, it was routine for Ms. Baker to be told or have words blurted out to

her, such as "get out" (over 150 times), "you're done" (over 90 times), "dead" or "you're dead"

(over 60), and "go away" (over 20 times). These insults were often hurled in her direction as her

co-workers walked past her cubical. Sometimes, however, they were done much more openly and

in work meetings.

11.    Despite working in such a hostile environment, for months Ms. Baker did not raise

any formal complaint with Human Resources.

12.    Instead, when appropriate, she used times with her manager to discuss the work

environment and how it could be improved. During such conversations, which are a routine and

normal part of the management of employees at IBM, Baker would mention these incidents.

However, nothing was done to improve the harsh and hostile work environment. Even so, Baker

did not file a formal complaint with IBM's Human Resources.

**B.     Baker Files A Formal HR Complaint After Her Manager Effectively Ignores a Poem
         Posted on an IBM Message System That Calls Cops Who Kill "[Nig--rs]" Heroes**

13.    This changed after an incident on November 2, 2017, when a co-worker named

Mike Robinson sent her a racially derogatory text on the IBM Slack message system. It stated:

> "Cops give a damn about negro, pull a trigger, kill a nigger he's a hero.
> Givin crack to the kids who the hell cares, one less ugly mouth on
> welfare."

14.    Ms. Baker notified and complained to her manager about the racially derogatory

message and told him that it was posted on the IBM Slack Message system, which employees like

Baker viewed. Specifically, it was normal and necessary for Baker to be required to access the

IBM Slack Message system as part of her daily work. Accordingly, Robinson knew that Baker and other Black employees would have seen the message when he posted it.

15.    However, no action was taken against Robinson after he sent it. Indeed, a few days later, Ms. Baker followed up with a manager, Mike Lamb. Mr. Lamb indicated that IBM had taken the message down from the message system, but he did not indicate any further action would be occurring moving forward.

16.    Worse, IBM did not take any other actions to ensure that the work environment was free from unlawful racial harassment. There was no apparent discipline to Mr. Robinson. There was no memo to employees regarding use of the Slack Message System. There was no message that IBM will not tolerate racism. No. There was nothing but silence. When IBM was faced with a grotesque racial message knowingly sent to an open message system where Black employees necessarily worked, IBM was silent.

17.    Once Baker realized that IBM's silence indicated that the situation was not being dealt with by her managers, Ms. Baker filed a formal hostile work environment complaint with Human Resources on March 12, 2018.

18.    At the time she filed this formal HR complaint, Baker had worked at IBM for over 14 months. She was not and had not previously been on any type of Performance Improvement Plan (PIP) or work probation. She consistently was among the systems analysts in her section with the most productivity when measured in terms of in terms of the number of work actions completed.

19.    Human Resources investigations do not occur overnight and often take weeks or months to complete. Despite the photographic evidence that a co-worker had left a poem on an IBM Slack Message system calling police officers who kill Black people heroes, at the end of

**PLAINTIFF'S ORIGINAL COMPLAINT - 4 OF 19**

Human Resources' investigation, Baker was informed by a Human Resources representative named Jackie M. Vickers that the investigation found no wrongdoing.

## C.    Baker is Placed on PIP Shortly After Investigation Finds "No Misconduct"

20.    Amazingly, on May 21, 2018, exactly 10 weeks after filing her complaint of a racially hostile work environment and shortly after Baker was told that the investigation had found "no wrongdoing," Baker was placed on a PIP. She was allegedly given 30 days to improve her performance or face termination.

21.    A good-faith PIP should be designed to allow improvement – if that is the PIP's actual goal. However, the PIP prepared for Baker was not designed for her to improve; it was designed for her to fail so it could be used as the basis for her termination. During the PIP, several things occurred which demonstrate bad faith on the part of IBM's managers and/or HR:

- First, the PIP itself focused on tasks and skills that Baker had never been asked to perform in her job duties, including some outside her job description. This served to focus the ultimate judge of the PIP on areas of work she was unfamiliar with and in areas which she could not learn quickly without training or other assistance. Despite the addition of these new duties, her work schedule was not altered, she was not provided any training on these new duties, and her co-workers were not instructed to assist her in learning these new duties.

- Second, only seven days into the PIP, Baker's manager Mr. Galyon joked about files disappearing in the system. The files in question were files Baker needed to prove her performance exceeded her PIP requirements, and the files in fact had been destroyed. Baker had been maintaining and updating these files daily since onboarding to document her high level of performance. The data included ticket numbers and showed she was one of the top three performers on the Team along with co-workers B. Hinton and T. Leonard.

- Third, during the PIP, she and management discussed that her working lead, Bryan Hinton, was not effectively communicating with Baker and another employee since his recent promotion. However, Hinton was not coached to correct this issue, and the lack of communication hindered both Ms. Baker's and her co-worker's performance. Worse, part of Baker's job duties during the PIP included accessing certain data. However, when she did so, Hinton would scold her to get off his "node," thus effectively hindering her ability to succeed in this area of her performance. Similar comments would come from another colleague on her shift as well.

**PLAINTIFF'S ORIGINAL COMPLAINT - 5 OF 19**

- Finally, Baker was also required to train and mentor new incoming System Administrators both before and during her PIP. Not only is training the new employees hardly the indicia of a poor performer, but it was also not part of her job description and interfered with her ability to learn the new tasks and duties assigned to her in the PIP.

22.     Thus, the PIP was a false pretext for her termination. It was designed and implemented in a manner to ensure that Baker could be unilaterally judged to have failed, and then to use the alleged failure as an excuse for her wrongful termination.

**D.     Baker Wrongfully Terminated at the End of Her Fake PIP**

23.     Accordingly, it is not surprising that despite fulfilling all the objective measures of her actual job duties during her PIP, Ms. Baker was still terminated at its end.

24.     Although Mr. Galyon told her she had not improved, once improper designed-for-failure areas are removed, she had exceeded the PIP's requirements for her actual job duties. Indeed, the statistics related to her main job areas show she was a superior performer in her job. In reality, Ms. Baker was fired because her manager did not like that she had taken her complaint of a racially hostile work environment to Human Resources.

25.     Ms. Baker has been injured by IBM's wrongful termination of her employment. As of the filing of this Complaint, she has been unable to secure permanent re-employment and her losses continue to mount.

## IV.     LEGAL GROUNDS

26.     Plaintiff brings this action for retaliation and discrimination under both the Civil Rights Act of 1871, codified at 42 U.S.C. Section 1981, and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. 2000e, *et seq.*

A.       **Section 1981 and Title VII Use Identical Legal Liability Theories**

27.      While there are some differences between Section 1981 and Title VII cases (such as the inclusion of individual liability stated above), the Fifth Circuit has long held that claims of intentional discrimination, which include racial discrimination and retaliation claims based on 42 U.S.C. § 1981, are analyzed for liability under the same rubric of analysis as Title VII cases. *See, e.g., Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 422 n. 1 (5th Cir.2000); *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir.1997); *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996); *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n. 7 (5th Cir.1994).

28.      Accordingly, unless otherwise noted, Plaintiff will cite to both Section 1981 and Title VII cases for their precedential value to the Plaintiff's Section 1981 case.

B.       **Title VII and Section 1981 Both Prevent Retaliation and Hostile Environment Discrimination**

29.      Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, national origin, religion, and other classifications, as well as retaliation based on opposition to activities made unlawful by Title VII.

30.      Specifically, 42 U.S.C. § 2000e-2 (a) states:

(a) Employer practices

It shall be an unlawful employment practice for an employer -

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**PLAINTIFF'S ORIGINAL COMPLAINT - 7 OF 19**

31.     Further, 42 U.S.C. 2000e-3 (a) states:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on—the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

32.     Compensatory and punitive damages may be awarded in cases involving intentional discrimination based on a person's race, color, national origin, sex, religion, disability, or genetic information.

33.     Compensatory damages pay victims for out-of-pocket expenses caused by the discrimination (such as costs associated with a job search or medical expenses) and compensate them for any emotional harm suffered (such as mental anguish, inconvenience, or loss of enjoyment of life). *See e.g., Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2016) (compensatory damages included mental anguish, emotional distress, and damage to reputation).

34.     Punitive damages may be awarded to punish an employer who has committed a malicious or recklessly indifferent act of discrimination.

35.     Specifically, 42 U.S.C. 2000e-5 (g) and (k) state:

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer,

employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(k) Attorney's fee; liability of Commission and United States for costs

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

36.    Additionally, 42 U.S.C. § 1981a states:

(a) RIGHT OF RECOVERY

(1) CIVIL RIGHTS

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e–5, 2000e–16] against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act [42 U.S.C. 2000e–2, 2000e–3, 2000e–16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

…

(b) COMPENSATORY AND PUNITIVE DAMAGES

(1) DETERMINATION OF PUNITIVE DAMAGES

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## C.    IBM Is Vicariously Liable for the Actions of Its Employees

37.    A corporate defendant may be liable for intentional discrimination by an employee

through *respondeat superior,* or vicarious liability. *See Green v. Albertson's, Inc.,* 67 Fed.Appx.

248 (5th Cir 2003), citing *Arguello v. Conoco, Inc.,* 207 F.3d 803, 810 (5th Cir.2000) (discussing 42 U.S.C. §§ 1981, 1982, and 2000a).

38.     Vicarious liability under Section 1981 includes ratification liability. *See*, *e.g.,* *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 409 (6th Cir. 1999) (To succeed on a claim of vicarious liability a plaintiff must "adduce specific evidence that the defendant 'instigated, supported, ratified, or encouraged' those actions … .'").

**D.     The Cat's Paw Theory of Liability Holds the Bias of an Actor Can Unlawfully Influence and Infect with Animus an Otherwise Independent Investigation or Decisionmaker**

39.     In *Staub v. Proctor Hospital,* 562 U.S. 411, 131 S.Ct. 1186 (2011), the Supreme Court determined that an employer should be held liable for employment discrimination based on the discriminatory animus of an employee, who influenced, but did not make, the ultimate employment decision.

40.     In this case, the discriminatory conduct of Mike Robinson and the retaliatory conduct of her manager was a significant influence in terminating Baker. Title VII requires the discrimination to be a motivating factor in the termination, and in this instance the discrimination was the motivating factor under the Cat's Paw theory.

41.     Cat's Paw theory applies to Title VII claims, as evidenced in *Zamora v. City Of Houston*, 798 F.3d 326, 331-32 (5th Cir. 2015) (holding cat's paw analysis applies in Fifth Circuit to Title VII cases); and, *Holcomb v. Iona Coll*., 521 F.3d 130, 143 (2d Cir. 2008) (holding a Title VII plaintiff can succeed "even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the [decision-making] process" (citation omitted).

42.     Under the Cat's Paw analysis, "the impermissible bias of a single individual <u>at any stage of the promoting process may taint the ultimate employment decision</u> ... so long as the individual shown to have the impermissible bias played a meaningful role" in the employment action. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) (emphasis added).

43.     When a supervisor or manager takes actions motivated by retaliatory animus that are intended to cause an adverse employment action and do cause that action, this conduct is sufficient to allow the conclusion that the employment decision, even if made by a different actor, is tainted by the same illegal bias or motive. *Zamora*, 798 F.3d at 332 (holding evidence of supervisor's animus was sufficient to show other City actor's decision was illegal).

44.     It is evident through her prima facie case for discrimination that Baker experienced bias towards her color that played a meaningful role in the ultimate decision to terminate her employment. Regardless of the intentions of the final decision maker, the racial bias of her co-worker and retaliatory conduct of her manager, and potentially others, appears to be the factual underpinning of IBM's action.

45.     Accordingly, even when an otherwise independent investigation occurs, an employer may not rely on a so-called "independent" investigation if it is tainted by the improper discriminatory or retaliatory animus of employees involved in the investigation:

> Cat's paw liability attaches when the biased intermediate employee's actions are "a causal factor of the ultimate employment action." [*Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 1193, 179 L.Ed. 144 (2011)]. The intermediate employee's actions need not be the sole cause of the adverse action; "[t]he decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes." *Id.* at 1192 (citations omitted) (emphasis in original).

> An employer will not be liable for its intermediate employee's discrimination if "the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action." *Id.* at 1193. However, if the adverse employment action is related to the discriminatory action, the employer may be liable. Neither

independent investigation nor independent judgment on the part of the employer provides a per se defense. For example, if the intermediate supervisor makes a biased report to the ultimate decisionmaker, it may be a causal factor in the adverse action if the independent investigation by the employer "takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* Also, if "the independent investigation relies on facts provided by the biased supervisor," *id.* then the investigation was not, in actuality, independent and the employer is liable.

See *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 351 (6th Cir. 2012).

### E. IBM May Not Retaliate Merely Because HR's Alleged Investigation Found "No Misconduct"

46.     Retaliation claims are expressly contained in the language of Title VII and are also cognizable under Section 1981 despite the absence of specific statutory language in it. *See CBOCS West, Inc. v. Humphries*, 553 39 U.S. 442 (2008) (Section 1981 claim). Common activities protected from retaliation under employment law, including Title VII and Section 1981, include: 1) opposing unlawful discrimination; 2) making a charge of unlawful employment discrimination; 3) testifying, assisting, or participating in any manner in an EEO investigation, proceeding or hearing. *See, e.g., Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506 (3d Cir. 2004) (termination for being a possible witness in an employment discrimination action is unlawful retaliation) (ADEA); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 103 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by *Burlington N. & S.F. Ry. Co. v. White*, 126 S.Ct. 2405 (2006); *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd 105 Cir. 1997) (advocating equal treatment was protected activity); *Aman v. Cort Furniture*, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed'" (quoting *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir. 1993) (*quoting Sumner v. United States*

*Postal Service*, 899 F.2d 203, 209 (2d Cir. 1990)), overruled on other grounds by *Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995)).

47.     The Fifth Circuit held over 40 years ago that the filing of a charge of discrimination and other communications with the EEOC are protected conduct even if the allegations are ultimately found to be false. *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1003-1007 (5th Cir. 1969) (holding "[t]here can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect her rights. The Act will be <u>frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent action</u>.") (emphasis added).

48.     Other subsequent cases have reinforced the holding of the Fifth Circuit in *Pettaway* as to complaints beyond filing a formal EEOC charge that are protected conduct even if false, including both opposition short of an investigation and statements made while participating in an investigation. *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981) (employee who opposed racially discriminatory hiring practices need not prove veracity of such opposed practices to receive anti-retaliation protection); *Thomas v. Norris*, 2009 U.S. Dist. LEXIS 107447 (B.D. Tex. 2009) (same).

49.     Notably, *Thomas* holds that opposition requires only a reasonable belief and participation at best only a good faith belief. *Id.* at 28-29. Further, the dissent in *Holt v. v. JTM Indus.*, 89 F.3d 1224 (5th Cir. 1996), recognizes that the EEOC's anti-retaliation position, stated in Section 614.1 of its Interpretive Manual, explicitly relies on *Pettway* in declaring as follows:

> (A) General--Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, is intended to provide "exceptionally broad protection" for protestors of discriminatory employment practices. *See Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1004-1005, 2 EPD § 10,011 (5th Cir.1969).

50.     Likewise, in a case, like here, where the employee was terminated after an internal complaint of discrimination was found by the employer to be unsupported by facts, the Fifth Circuit has held that the employee was protected from retaliation irrespective of her ability to prove the original complaint or subsequent statements:

> [the Employee/Complainant] need not prove that the discriminatory hiring practices alleged in her complaint in fact, existed. [She] need only prove that [she] had a "reasonable belief" that such practices existed in order to be protected by Title VII of the Civil Rights Act of 1964.
>
> *See De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 853 n. 2 (5th Cir.1982), citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981), and also citing *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1045–46 (7th Cir.1980) (employee who makes good faith, reasonable charges that employer's practice violates Title VII is protected from retaliatory discharge though charges later determined to be unfounded).

51.     The *Berg* case, cited in *De Anda*, discusses its underlying legal analysis for why employees need not prove the veracity of their complaints to have protection from retaliation – because to interpret the opposition clause to require such proof would undermine the ability of Title VII (or in this case Section 1981) to allow employees to seek better workplaces short of litigation:

> [this argument] undermines Title VII's central purpose, the elimination of employment discrimination by informal means; destroys one of the chief means of achieving that purpose, the frank and nondisruptive exchange of ideas between employers and employees; and serves no redeeming statutory or policy purposes of its own. Section 2000e-3(a) plays a central role in effectuating these objectives. By protecting employees from retaliation, it is designed to encourage employees to call to their employers' attention discriminatory practices of which the employer may be unaware or which might result in protracted litigation to determine their legality if they are not voluntarily changed.
>
> 612 F.2d at 1045.

**PLAINTIFF'S ORIGINAL COMPLAINT - 14 OF 19**

52.     There can be no doubt that a Black employee who brings evidence of a racial epithet calling cops who kill black people heroes is a good faith complaint. Indeed, in this case, IBM placed Baker on a fake PIP shortly after it failed to corroborate her complaint. Instead, despite visual evidence to the contrary, IBM found that there was "no misconduct." IBM's alleged use of a bogus PIP on the heels of this HR non-finding was a pretext for the real reasons – retaliation for filing the complaint and discrimination based on her being Black.

**F.      Punitive Damages Are Not Capped Under Section 1981**

53.     The Supreme Court has held that a plaintiff in a Section 1981 action is entitled to punitive damages "under certain circumstances." Such circumstances include acting with malice or reckless indifference to Plaintiff's federally protected rights to be free from discriminatory or retaliatory conduct. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 54546 (1999). To recover punitive damages against IBM, Baker may impute vicarious liability for punitive damages through the actions of an employee acting in a "managerial capacity" with such malice or reckless indifference. *See Kolstad,* 527 U.S. at 539. Unlike in Title VII cases, there are no limits on punitive damages in Section 1981 cases. Punitive damages are a legal question for the jury.

54.     The Supreme Court has held that a plaintiff in a Section 1981 action is entitled to punitive damages "under certain circumstances." Such circumstances include acting with malice or reckless indifference to Plaintiff's federally protected rights to be free from discriminatory or retaliatory conduct. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 54546 (1999). To recover punitive damages against IBM, Baker may impute vicarious liability for punitive damages through the actions of an employee acting in a "managerial capacity" with such malice or reckless indifference. *Kolstad,* 527 U.S. at 539. Unlike in Title VII cases, there are no limits on punitive damages in Section 1981 cases. Punitive damages are a legal question for the jury.

## V.     CLAIMS FOR RELIEF

**A.     Count One - Discrimination under Title VII**

55.     Plaintiff realleges each allegation set forth in the paragraphs above.

56.     Defendant terminated Plaintiff, in whole or in part, because of her color (Black).

57.     Defendant's termination of Plaintiff was committed with malice or reckless indifference.

58.     By reason of the foregoing, Plaintiff hereby asserts a claim against the Defendant for wrongful termination based on discrimination in violation of Title VII, 42 U.S.C. 2000e-2(a).

59.     Plaintiff seeks and requests that the Court award back pay, that is the payment of wages lost prior to trial; either the equitable remedy of reinstatement or an equitable determination that reinstatement is unfeasible and the equitable award of front pay; other direct and consequential compensatory damages, including without limitation, mental anguish, emotional distress, loss of enjoyment of life, and damage to reputation; punitive damages; plus, attorney fees and cost of court; and any and all other damages in law or compensation in equity that the Court deems just and right.

**B.     Count Two – Retaliation under Title VII**

60.     Plaintiff realleges each allegation set forth in the paragraphs above.

61.     By reason of the foregoing, Plaintiff hereby asserts a claim against the Defendant for retaliatory discharge pursuant to Title VII.

62.     By reason of the foregoing, Plaintiff hereby asserts a claim against Defendant for wrongful termination in retaliation for filing a claim of discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-3.

63.     Defendant's termination of Plaintiff was committed with malice or reckless indifference.

64.     Plaintiff seeks and requests that the Court award back pay, that is the payment of wages lost prior to trial; either the equitable remedy of reinstatement or an equitable determination that reinstatement is unfeasible and the equitable award of front pay; other direct and consequential compensatory damages, including without limitation, mental anguish, emotional distress, loss of enjoyment of life, and damage to reputation; punitive damages; plus, attorney fees and cost of court; and any and all other damages in law or compensation in equity that the Court deems just and right.

**C.      Count Three – Discrimination under Section 1981**

65.     Plaintiff realleges each allegation set forth in the paragraphs above.

66.     Defendant terminated Plaintiff, in whole or in part, because of her color (Black).

67.     Defendant's termination of Plaintiff was committed with malice or reckless indifference.

68.     Plaintiff seeks and requests that the Court award back pay, that is the payment of wages lost prior to trial; either the equitable remedy of reinstatement or an equitable determination that reinstatement is unfeasible and the equitable award of front pay; other direct and consequential compensatory damages, including without limitation, mental anguish, emotional distress, loss of enjoyment of life, and damage to reputation; punitive damages; plus, attorney fees and cost of court; and any and all other damages in law or compensation in equity that the Court deems just and right.

**D.      Count Four – Retaliation under Section 1981**

69.     Plaintiff realleges each allegation set forth in the paragraphs above.

70.     By reason of the foregoing, Plaintiff hereby asserts a claim against the Defendant for retaliatory discharge pursuant to Section 1981.

71.     Defendant's termination of Plaintiff was committed with malice or reckless indifference.

72.     Plaintiff seeks and requests that the Court award back pay, that is the payment of wages lost prior to trial; either the equitable remedy of reinstatement or an equitable determination that reinstatement is unfeasible and the equitable award of front pay; other direct and consequential compensatory damages, including without limitation, mental anguish, emotional distress, loss of enjoyment of life, and damage to reputation; punitive damages; punitive damages; plus, attorney fees and cost of court; and any and all other damages in law or compensation in equity that the Court deems just and right.

## VI.     JURY DEMAND

Plaintiff seeks an equitable injunction of reinstatement or equitable front pay in the alternative as well as legal damages. However, in cases with remedies sounding in equity and in law, to the extent there are one or more issues of fact or law suitable for a jury, a jury is proper. Accordingly, the Plaintiff respectfully requests a jury trial on all such issues.

## VII.     PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover Judgment against Defendant pursuant to Section 1981, and against Defendant IBM pursuant to Title VII, with the following relief:

(1)     Past and future pecuniary losses, and lost wages from the time of termination until the time of trial;

(2)     Equitable reinstatement; or alternatively, if the Court makes an equitable

finding that reinstatement is not feasible, that the Court award of the equitable remedy of front pay including loss of wages in the future and loss of future earnings capacity;

(3)     Compensatory damages, including damages for past and future mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life, emotional distress, physical distress, damage to reputation, and other nonpecuniary losses;

(4)     Punitive damages;

(5)     Prejudgment and post-judgment interest at the maximum legal rate;

(6)     Costs of Court; Attorneys' fees; and All such other and further relief in law

or equity to which Plaintiff may be justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ Eric N. Roberson*

_____

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, TX 75204
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com

**PLAINTIFF'S ORIGINAL COMPLAINT - 19 OF 19**